**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JACKSON HILL ROAD SHARON CT, LLC, and JACKSON HILL ROAD SHARON CT, LLC NUMBER TWO, LLC, Plaintiffs, | : | |
| v. | : | 3:07-cv-1445 (WWE) |
| TOWN OF SHARON, CYNTHIA RUBICAM, WILLIAM J. MANASSE, JAMES DiMARTINO W. PETER REYELT, JR., ELIZABETH M. HALL, STANLEY MACMILLIAN, JR., CHRISTOPHER B. CLOW and ROBERT V. FISH, Defendants. | : | |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO DISMISS**

This action arises from the claims of plaintiffs Jackson Hill Road Sharon CT, LLC ("Jackson Hill LLC") and Jackson Hill Road Sharon CT, LLC Number Two, LLC ("Jackson Hill LLC #2") that defendants interfered with plaintiffs' pursuit of a special exception to a zoning regulation and, in doing so, violated plaintiffs' rights under the Fifth Amendment to the United States Constitution and sections 8-11 and 52-557n of the Connecticut General Statutes. Plaintiffs also assert common law claims of tortious interference with business and contractual relations and civil conspiracy. Plaintiffs seek money damages, punitive damages as well as damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988.

Now pending before the Court are defendants' various motions to dismiss (Docs. #18, 25, 50).

## BACKGROUND

For purposes of ruling on these motions to dismiss, the Court accepts all allegations of the Second Amended Complaint as true.

Plaintiffs Jackson Hill LLC and Jackson Hill LLC #2 are the owners of real property in Sharon, Connecticut for which they sought special exception approval to construct a multi-dwelling complex development.

Defendants Cynthia Rubicam, William J. Manasse, James DiMartino, W. Peter Reyelt, Jr., Elizabeth M. Hall and Stanley MacMillan, Jr. are members of the Planning and Zoning Commission of the Town of Sharon ("Commission"). Defendants Rubicam and Manasse recused themselves from the consideration of plaintiffs' special exception. Defendants Christopher B. Clow and Robert V. Fish are private citizens who opposed plaintiffs' development of the property.

On January 12, 2005, plaintiff Jackson Hill LLC made an informal presentation to the Commission regarding a proposed multi-dwelling complex development plan for land owned at 40 Jackson Hill Road. Manasse, though recused, instructed Jackson Hill LLC to file two separate applications because plaintiffs owned two separate parcels of land.

After this meeting, defendant Fish contacted counsel for Jackson Hill LLC and asked at what price Jackson Hill LLC would sell the land. Fish told Jackson Hill LLC that if the price were unreasonable, he would oppose plaintiffs' development of the property. Jackson Hill LLC then submitted two separate applications to the Commission. Before the commencement of public hearings on Jackson Hill LLC's application, Rubicam and DiMartino placed signs on their respective properties

opposing the proposed development.

On January 26, 2005, certain opponents to Jackson Hill LLC's application, including defendant Clow as Secretary, created Sharon Association, Inc. to oppose the development. Plaintiffs contend that Fish and Rubicam were also associated with the Sharon Association. On March 9, the Commission held a public hearing to consider Jackson Hill LLC's pending applications, which were then withdrawn to allow Jackson Hill LLC to seek approval from the Inland/Wetlands Commission.

On April 13, Jackson Hill LLC submitted two special exception applications for a multi-dwelling complex development to the Commission for approval. At that meeting, the Commission, upon a letter request from Clow, voted to repeal the regulation allowing multi-dwelling complex developments. Rubicam took part in this vote. This repeal would have no effect on the pending application, however.

On June 8, 2005, the Commission commenced the public hearing regarding Jackson Hill LLC's applications. On July 21, in response to an alleged requirement that the parcels of land be owned by separate entities, Jackson Hill LLC created Jackson Hill LLC #2 to own one of the parcels of land.

Plaintiffs offered expert witnesses and engineering plans in support of their proposal. In response, Clow testified as to the existence of an easement in favor of himself and his wife across the property; although Clow claimed that the easement still existed, such easement was released in October 2003. On October 3, 2005, the Town Attorney for the Town of Sharon sent Reyelt, as Vice-Chairman of the Commission, a letter providing justification for denying the applications, including that the applications could be denied due to the existence of the easement. In addition, the Town Attorney

argued that the applications could be denied because Jackson Hill LLC was named on the applications although Jackson Hill LLC #2 owned one of the parcels. Jackson Hill LLC #2, however, had consented to and joined in the applications. At the October 3 hearing, the Commission voted to deny the applications after reading the Town Attorney's letter for six minutes and without further substantive discussion. Because of the repeal of the regulations addressing multi-dwelling complex developments, plaintiffs allege that they were unable to pursue the development following the Commission's denial.

Subsequently, an attorney representing Clow contacted plaintiffs' attorney and indicated that if plaintiffs agreed to develop the property pursuant to an alternative development plan proposed by Clow, Clow would have the multi-dwelling complex regulations reimposed.

On April 25, 2006, the Town of Sharon First Selectman sent a letter to plaintiffs' principal indicating that the Town would "jump start" the Commission's reinsertion of the multi-dwelling complex regulations if plaintiffs would develop the property in a manner acceptable to Clow. On May 5, 2006, the First Selectman offered to coordinate a meeting between plaintiffs' principal, Clow and representatives of the Town "under cover of darkness" to discuss alternatives for the property.

Following the denial, Fish and Clow met to discuss how to purchase the property to avoid its development. Additionally, Vista Partners, an unrelated entity, obtained an option to purchase the property. Vista Partners' plans for development would require communications with Clow.

Plaintiffs bring this action to seek compensation for the conduct of the Town of

Sharon, the members of the Commission, Clow and Fish.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

### I. Defendant Clow

Plaintiffs allege that defendant Clow committed tortious interference with plaintiffs' business and contractual relationship (count XIV) and participated in a civil conspiracy (count XXII). Clow moves to dismiss on the grounds that the complained of conduct was protected by the First Amendment to the United States Constitution, specifically the Noerr-Pennington doctrine. Plaintiffs contend that Clow's actions are not protected by the Noerr-Pennington doctrine because Clow's actions before the Commission fall within the sham exception to the doctrine. Plaintiffs also argue that

Clow's "petitioning" of the zoning board involved misrepresentations.

A claim of tortious interference with business relations requires a plaintiff to "plead and prove at least some improper motive or improper means" that is "beyond the fact of the interference itself." Blake v. Levy, 191 Conn. 257, 262 (1983). Specifically, plaintiff must establish "(1) a business opportunity, (2) defendants' knowledge of the opportunity, (3) defendants' intentional interference, and (4) plaintiff[s'] loss of the opportunity." TLC Dev. v. Town of Branford, 855 F. Supp. 555, 559 (D. Conn. 1994). Tortious conduct may be established by proof of fraud, misrepresentation, intimidation, or malicious intent on the part of a defendant. Robert S. Weiss & Associates, Inc. v. Wiederlight, 208 Conn. 525, 536 (1988). In considering whether the alleged acts of interference are improper, Blake referenced the factors enumerated in the Restatement (Second), Torts § 769, which include "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." 191 Conn. at 263 n.3.

The Noerr-Pennington doctrine "establishes a party's right to petition all branches of the government by providing broad antitrust immunity to a petitioning defendant despite an anti-competitive purpose." T.F.T.F. Capital Corp. v. Marcus Dairy, Inc., 33 F. Supp. 2d 122, 125 (D. Conn. 1998). Despite its antitrust origins, the doctrine has been held to protect the exercise of a defendant's First Amendment rights even when such action would normally constitute tortious interference. See NAACP v.

Claiborne Hardware Co., 458 U.S. 886, 912 (1982); Zeller v. Consolini, 59 Conn. App. 545, 551 (2000). As this Court has held, petitioning the government cannot, "as a matter of law form the basis of a ... common law claim of tortious interference with business expectancy because imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems under the First Amendment." T.F.T.F. Capital, 33 F. Supp. 2d at 125; Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 137 (1961) ("In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives."). Further, courts have held that the doctrine applies to zoning proceedings before a local zoning board. See, e.g., Empress LLC v. City & County of San Francisco, 419 F.3d 1052 (9th Cir. 2005); WIXT Television, Inc. v. Meredith Corp., 506 F. Supp. 1003 (N.D.N.Y 1980).

The Noerr-Pennington doctrine further protects "allegedly false statements," Tuosto v. Philip Morris USA Inc., 2007 U.S. Dist. LEXIS 61669 (S.D.N.Y. Aug. 21, 2007), and statements that fall "far short of the ethical standards generally approved in this country." Eastern R.R. Presidents Conference, 365 U.S. at 140. It does not, however, protect conduct that amounts to a "sham." The sham exception includes "unethical conduct in the setting of the adjudicatory process or the pursuit of a pattern of baseless, repetitive claims." Landmarks Holding Corp. v. Bermant, 664 F.2d 891, 896 (2d Cir. 1981). Specifically, it involves examining whether defendants acted "with or without probable cause, and regardless of the merits of the cases." California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 512 (1972). The gravaman of the

inquiry is whether defendants' conduct had "a purpose to deprive the competitors of meaningful access to the agencies and courts." Id. at 512. The Court of Appeals for the Fourth Circuit has recognized that "misrepresentations made with intent to abuse the administrative processes so as to deny [plaintiff] meaningful access ... would fall within the sham exception." Hospital Bldg. Co. v. Trustees of Rex Hospital, 691 F.2d 678, 687 (4th Cir. 1982).

While, the conduct of Clow would generally fall under the protection of the Noerr-Pennington doctrine, plaintiffs allege that Clow intentionally misled the Commission through his misrepresentations and, in doing so, denied plaintiffs meaningful access to the Commission. Therefore, dismissal is inappropriate on this count.

Count XXII of the Second Amended Complaint is for civil conspiracy against Clow. To state a cause of action for civil conspiracy to commit a substantive tort in Connecticut, plaintiff must allege "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Macomber v. Travelers Prop. & Cas. Corp., 277 Conn. 617, 635-636 (2006).

Plaintiffs allege that the underlying tort to support this claim is Clow's tortious interference with plaintiffs' business and contractual relations. Because plaintiffs may successfully make out a claim that Clow's conduct is not protected by the Noerr-Pennington doctrine, it would be inappropriate to dismiss this count as plaintiffs allege that Clow conspired with the members of the Commission.

## II. Defendant Fish

The Second Amended Complaint alleges that defendant Fish committed tortious interference against plaintiffs and that Fish conspired with the other defendants to commit a tort. The facts regarding Fish are virtually identical to those of Clow, except there is no allegation that Fish misrepresented any information to the Commission. Because of this difference, his conduct did not rise to the level of a sham. Based on the facts pleaded in the Second Amended Complaint, Fish's actions were meant to oppose plaintiffs' plans, but not in a way that denied plaintiffs meaningful access to the zoning board. See Eastern R.R. Presidents, 365 U.S. at 139 (noting that prohibiting individuals from expressing their views about matters in which they have a financial interest would violate their right to petition the government). Therefore, Fish's motion to dismiss will be granted as to count XV.

Because there is no underlying tort to support a claim for civil conspiracy, this count must be dismissed as well.

## III. Commission and Town Defendants

### A. Claims Under Section 8-11 of the Connecticut General Statutes

Counts II through VI of the Second Amended Complaint charge that defendants Rubicam, DiMartino, Reyelt, MacMillan and Hall violated plaintiffs' rights under section 8-11 of the Connecticut General Statutes. These defendants seek dismissal of these counts on the grounds that they fail to state claims cognizable under the law and that plaintiffs have failed to exhaust the administrative remedies required by state law.

The parties agree that section 8-8(b) of the Connecticut General Statutes

requires the exhaustion of administrative remedies prior to the filing of this suit in this Court. Plaintiffs, however, contend that they should be excused from this requirement as any appeal would be futile insofar as the change in the multi-dwelling regulations during the process foreclosed a successful petition on any remand. Plaintiffs, however, cite no cases for the proposition that the regulations that would apply on remand would not be the original applicable regulations.

Section 8-2h(a) of the Connecticut General Statutes provides that "[a]n application filed with a zoning commission, planning and zoning commission, zoning board of appeals or agency exercising zoning authority of a town ... which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations ... of such town, city or borough taking effect after the filing of such application." Under this statute, once an application is made to a zoning board, that application is judged under whatever rules apply at its inception, even if the regulations change. See Daw v. Zoning Bd. of Appeals, 63 Conn. App. 176, 185 (Conn. App. Ct. 2001) ("Section 8-2h simply states that if zoning regulations are changed after an application is filed, that application does not have to comply in order to be approved."). Because an appeal to the zoning board of appeals would not have been futile, plaintiffs could not have been excused from that requirement. Therefore, they cannot now seek relief under section 8-11. Dismissal is thus appropriate on these grounds.

**B. Municipal Negligence Claim**

Plaintiffs argue that the Town of Sharon is liable for the torts of its officers, the

members of the Commission, pursuant to section 52-557n of the Connecticut General Statutes. Defendants seek dismissal of this count because the Commission members were protected under the law for their discretionary acts. Plaintiffs argue that the Commission members' actions were administrative in nature and therefore are not barred by section 52-557n.

Section 52-577n provides that "a political subdivision of the state shall be liable for damages to person or property caused by the negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties." Conn. Gen. Stat. § 52-557n(a)(1)(A). A town cannot be liable, however, for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Id. § 52-557n(a)(2)(B).

The complaint asserts that the Town is liable due to the defendants' negligence. It is clear that the "the special exception process is discretionary...." Mun. Funding, LLC v. Zoning Bd. of Appeals, 270 Conn. 447, 455 (2004). The opposite of a discretionary action is a ministerial one, not an administrative one. Therefore, plaintiffs' citation to A.P. & W. Holding Corp. v. Planning & Zoning Bd., 167 Conn. 182 (1974), is misplaced. In commenting that the zoning board acts in an "administrative capacity," the Supreme Court was not indicating commenting on the ministerial/discretionary divide. It is because the zoning board weighs evidence and decides whether to issue a special exception that its actions are discretionary and not ministerial. See Conn. Gen. Stat. § 8-3c(b) ("Whenever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision."); see also Burns v.

Board of Educ., 228 Conn. 640, 645 (1994) ("The word 'ministerial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion."). Therefore, section 52-557n immunizes the Town from liability based on the Commission members' actions.

This conclusion is not affected by the actions of the Commission members outside of the Commission meetings. The argument that the Commission members' actions outside of the meetings renders the Town liable for their actions is precluded by section 52-557n(a)(1)'s language that a town is only liable for the actions of an officer acting "within the scope of his employment or official duties." Therefore, plaintiffs are caught in a catch-22. Actions by defendants within the meetings or their official roles are foreclosed by section 52-557n's limitation on discretionary acts while those outside meetings, to the extent that they are not official actions, are forestalled by the "official duties" requirement.

Finally, section 52-557n(b)(7) further bars recovery against the Town for the actions of the Commission members in their official positions because it provides that:

> a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety....

Dismissal, therefore, is warranted on this count.

### C. Tortious Interference Claim

Counts VIII through XIII allege that Commission defendants committed a tortious interference of plaintiffs' business and contractual relations. Defendants move to dismiss these counts on the grounds that plaintiffs have failed to allege that any actions committed by these defendants were in fact tortious. Plaintiffs aver that they have alleged certain tortious conduct by the members of the Commission.

As discussed above, to succeed on their claims of tortious interference, plaintiffs must demonstrate "(1) a business opportunity, (2) defendants' knowledge of the opportunity, (3) defendants' intentional interference, and (4) plaintiff[s'] loss of the opportunity." TLC Dev., 855 F. Supp. at 559. Defendants, therefore, are misplaced when they contend that plaintiffs must establish some illegality in defendants' action.

Plaintiffs have sufficiently alleged the first, second and fourth elements of their claim.

Courts have previously recognized the importance of fairness and transparency in zoning procedures. As the Connecticut Supreme Court has stated:

> The administration of power [in zoning proceedings], whether it be denominated legislative or quasi-judicial, demands the highest public confidence. Anything which tends to weaken such confidence and to undermine the sense of security for individual rights which the citizen is entitled to feel is against public policy.

Low v. Madison, 135 Conn. 1, 9 (1948). Therefore, the "neutrality and impartiality of members are essential to the fair and proper operation of zoning authorities." Fletcher v. Planning & Zoning Comm'n, 158 Conn. 497, 507 (1969). Further, the members of a zoning board "should carefully refrain from discussing privately with interested persons

matters which are properly the subject of determination by the board." Nielsen v. Zoning Bd. of Appeals, 152 Conn. 120, 123 (1964).

Under these principles, plaintiffs' complaint alleges the third element of a tortious interference claim. Plaintiffs allege that Rubicam and Manasse failed to act appropriately under section 8-11 after they recused themselves, that Rubicam and DiMartino expressed opposition to the proposal despite being members of the Commission and that the Commission members discussed issues related to their applications and the property. These actions, if proven, would establish defendants' liability under these counts.

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendant Clow's motion (Doc. #18) and GRANTS defendant Fish's motion (Doc. #25). The Court further GRANTS in part and DENIES in part the motion to dismiss of defendants Town, Rubicam, Manasse, DiMartino, Reyelt, Hall and MacMillan (Doc. #50). Plaintiffs are instructed to amend their Second Amended Complaint, dismissing counts II through VII, XV and XXIII, consistent with this ruling within ten days.

Dated at Bridgeport, Connecticut, this 12th day of June, 2008.

/s/
Warren W. Eginton
Senior United States District Judge