**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JACKSON HILL ROAD SHARON CT, LLC,      :
and JACKSON HILL ROAD SHARON CT,       :
LLC NUMBER TWO, LLC,                   :
      Plaintiffs,                       :
                                        :
v.                                     :      3:07-cv-1445 (WWE)
                                        :
TOWN OF SHARON, CYNTHIA RUBICAM,       :
WILLIAM J. MANASSE, JAMES DiMARTINO    :
W. PETER REYELT, JR., ELIZABETH M.     :
HALL, STANLEY MACMILLIAN, JR.,         :
CHRISTOPHER B. CLOW and ROBERT V.      :
FISH,[1]                               :
      Defendants.                       :

**MEMORANDUM OF DECISION ON**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

     This action arises from the claims of plaintiffs Jackson Hill Road Sharon CT, LLC

("Jackson Hill LLC") and Jackson Hill Road Sharon CT, LLC Number Two, LLC

("Jackson Hill LLC #2") that defendants interfered with plaintiffs' pursuit of a special

exception to a zoning regulation and, in doing so, violated plaintiffs' rights under the

Fourteenth Amendment to the United States Constitution.  Plaintiffs also assert

common law claims of tortious interference with business and contractual relations and

civil conspiracy.  Plaintiffs seek money damages and punitive damages as well as

damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988.

     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1367.

_____

     [1]    All claims against defendant Robert V. Fish were previously dismissed by
the Court (Doc. #58).

1

Defendant Clow and defendants Town of Sharon ("Town"), Cynthia Rubicam, William J. Manasse, James DiMartino, W. Peter Reyelt, Jr., Elizabeth M. Hall and Stanley MacMillan, Jr. ("Town Defendants") have filed motions for summary judgment which are now pending before the Court (Docs. #88 and 89).

## BACKGROUND

The parties have submitted briefs, statements of fact and supporting exhibits, which reflect the following factual background.[2]

Plaintiffs are two limited liability companies formed under Connecticut law. According to the third amended complaint, plaintiff Jackson Hill LLC sought special exception approval to construct a multi-dwelling complex development on approximately 42 acres in Sharon, Connecticut.  Plaintiff Jackson Hill LLC #2 is the record owner of such property, the property having been transferred to it from Jackson Hill LLC at the direction and/or recommendation of defendants and the Town Planning and Zoning Commission.  At all relevant times, Robert DePretis was plaintiffs' manager.

Town defendants constitute the Town of Sharon and six present or former members of the Town of Sharon Planning and Zoning Commission ("Commission"). Defendants Rubicam, Manasse, DiMartino, Reyelt, Hall and MacMillan are unpaid elected or appointed officials of the Town of Sharon.  According to the third amended

---

[2]     Town defendants have filed a motion to strike certain statements in plaintiffs' Local Rule 56(a)(3) statement that are unsupported by citations to facts in the record (Doc. #103).  Because the Court has an obligation to review only admissible evidence, the Court will grant Town defendants' motion insofar as it will not review any factual assertion not supported by evidence in the record.  Additionally, as to any facts that plaintiffs deny without citing to relevant factual support for such denial, the Court will deem such facts as admitted pursuant to Local Rule 56(a)(1).

complaint, defendant Christopher Clow has a residence near plaintiffs' property and has opposed the proposed development.

In 2005, plaintiffs submitted two applications pursuant to Article VIII, Section 8 of the Sharon Zoning Regulations to the Commission for a special permit to construct a condominium development pursuant to the Town's then-applicable regulations. The Commission conducted a public hearing on the applications on June 8, 2005 with continuances on July 6, July 27 and August 3. At the public hearing, plaintiffs were represented by engineers, attorneys, architects and certified planners. The Commission conducted five special meetings between the close of the public hearing and the vote on the applications.

During the public hearing, Clow submitted to the Commission a title search showing the ownership issues with respect to the properties. The title search, dated February 8, 2005, contained the following introduction:

> Attached are the requested title searches for 40, 42 and 70 Jackson Hill Road. The Grantor and Grantee notes are complete for the time periods stated on the reports, however, as the searches were done for the purpose of determining easement rights and property configuration other title issues, encumbrances, liens and mortgages may not be reported.

Plaintiffs assert that Clow originally requested a full title search be done, but that he later directed Heidi Maresh to perform a more limited search. This limited title search did not reference the fact that the Clow easement had been released in October 2003.

During the Commission's deliberations, the Commission asked the Commission attorney whether it could request a title search to aid in its deliberations. According to the response of Attorney Thomas Bryne, counsel to the Commission, the Commission

was not sure if Clow's submission was complete for the Commission's purpose.  On

August 29, Bryne responded that a title search could not be done because "it would

serve no purpose to have a title search done at this time.  Any information disclosed in

such a search would be non-record and could not be utilized by the commission in

reaching its decision."

Defendant Hall subsequently conducted independent research into this issue.

According to the minutes of the September 15, 2005 Commission meeting:

> Hall stated in her review of the deeds, a reference of the
> easement is carried through the deed from Jennette to Clow....
> [It is] clear that the easement to the Clow property is still
> [intact] – goes right behind the "manor" building straight
> through to the Clow property.

In a letter to defendant Reyelt dated October 3, 2005, Byrne indicated that

plaintiffs' applications could be denied because (1) Jackson Hill LLC #2 had no interest

in the property at the time that the applications were submitted and (2) the Saliter and

Clow rights-of-way ran through the property and there was no evidence that either the

Saliters or the Clows had consented to any disturbance of their respective rights-of-

way.  The applications were denied at a special meeting on October 3 for the reasons

expressed in Byrne's letter.  Plaintiffs did not appeal the denial of their applications to

the Sharon Zoning Board of Appeals or the Connecticut Superior Court.

Town defendants assert that plaintiffs had no financing commitments or other

contractual relations in place for the actual construction or marketing of the planned

condominiums.  Plaintiffs represent that no financing commitments or contractual

relations were put in place because the proposal was denied.

4

After the denial, plaintiffs entered into an option agreement with Vista Partners

LLC ("Vista"), a land developer.  Vista paid plaintiffs approximately $800,000 for an

option to buy the subject property for $6.85 million.  Clow did not oppose Vista's

proposed development.  Vista did not pursue its proposed development, but did offer to

purchase the property for $3.6 million.  DePretis informed Vista that plaintiffs would not

sell for that amount.  Plaintiffs' expert witness, Alan Schacter, testified that had plaintiffs

accepted Vista's $3.6 million offer, plaintiffs would have had no damages in this case.

There is no evidence that any Town defendant or other Town official

communicated with any person, including defendant Clow, regarding the substance of

plaintiffs' applications outside of the formal hearing process between their submission

and the vote on October 3.  The Commission members, with the exception of Reyelt,

testified that they had no communications with defendant Clow outside the Commission

meetings.  Reyelt testified that it was "possible" that he had discussions with Clow

outside the public hearings because Reyelt knew Clow "socially," Reyelt did not recall

any specific discussions.

Plaintiffs have produced no evidence that their plan for the expungement and/or

relocation of the easement across their property in favor of abutting landowner Karl

Saliter had ever been discussed with or approved by Saliter.  Town defendants assert

that plaintiffs presented no evidence demonstrating the surrender of an easement

across the property in favor of defendant Clow; plaintiffs assert that they were not

permitted to submit such evidence at the hearing.

Plaintiffs' expert witness, Schacter, calculated that plaintiffs have suffered damages in the form of lost net asset value of $1,814,000 and out-of-pocket expenses of $725,424.

### DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v.

6

County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**I.    Claims Against Town Defendants**

**A.    Inverse Condemnation**

Count one of plaintiffs' operative complaint alleges that the change in zoning regulations deprived them of their reasonable investment-backed expectations for the property.

The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation."  The Connecticut Constitution similarly provides that "The property of no person shall be taken for public use, without just compensation therefor."  Article first, § 11.  The Connecticut provision is interpreted the same as the federal protection.  See Bauer v. Waste Mgmt., 234 Conn. 221, 250 (1995) ("[W]e have never interpreted the two provisions to require different analysis.").[3]

Inverse condemnation under state law occurs when either: (1) application of the regulation amounted to a practical confiscation because the property cannot be used for any reasonable purpose; or (2) under a balancing test, the regulation's application

---

[3]     Plaintiffs do not address the federal Fifth Amendment in their response to Town defendants' argument regarding the Takings Clause.  Therefore, the Court will dismiss plaintiffs' federal taking claims to the extent that one is asserted in count one of the operative complaint.

impermissibly has infringed upon the owner's reasonable investment-backed expectations of use and enjoyment of the property so as to constitute a taking." Rural Water Co. v. Zoning Bd. of Appeals, 287 Conn. 282, 299 (2008).  Plaintiffs argue that an inverse condemnation has occurred because their reasonable investment-backed expectations have been infringed.

Under Connecticut law, the court considers "the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." Bauer, 234 Conn. at 256.  The court must weigh the financial effects on the owner with the health, safety and welfare of the community. Samp Mortar Lake Co. v. Town Plan & Zoning Commission, 155 Conn. 310, 315-16 (1967).

Plaintiffs assert that they were subjected to an inverse condemnation by the Commission's denial of their request for a special exception to the zoning law.  The Court is not persuaded that plaintiffs were denied their reasonable investment-backed expectations where their ability to use the property was unchanged.  Plaintiffs sought an exception from the zoning law.  As demonstrated below, there is no right to such exception where zoning guidelines are discretionary.  Therefore, although plaintiffs were unable to use the property as they desired, there could have been no takings by the Commission or any diminished ability to reasonably use the property.  Plaintiffs were able to use the property in the same manner after the Commission's decision as they could when they acquired the property.  See Southview Assoc., Ltd. v. Bongartz, 980 F.2d 84, 107 (2d Cir. 1992) (finding that plaintiff could not have reasonably

expected its plans to proceed where variance was necessary).  In this case, a reasonable jury would have to conclude that plaintiffs' investment backed expectations were simply not reasonable.

**B.    Tortious Interference with Business and Contractual Relations**

Plaintiffs claim that each of the individual Town defendants tortiously interfered with its business and contractual relations.

A claim of tortious interference requires that: (1) a contract or beneficial relationship exists; (2) defendant has knowledge of that relationship; (3) defendant intended to interfere with that relationship; and (4) plaintiff suffered an actual loss as a result of that interference.  Hart, Nininger and Campbell Assoc., Inc. v. Rogers, 16 Conn. App. 619, 629 (1988).  To prevail, plaintiffs must prove that defendants committed tortious conduct such as fraud, misrepresentation, intimidation or malice. Solomon v. Aberman, 196 Conn. 359, 365 (1985).

In addition, the Court looks to the factors laid out in the Restatement (Second), Torts § 769.  These factors include "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."  Blake v. Levy, 191 Conn. 257, 263 n.3 (1983).

Even assuming that a relationship exists and that the individual Town defendants knew of that relationship, plaintiffs have presented no evidence that any individual defendants, with the exception of DiMartino, intended to interfere with that relationship.

9

Plaintiffs ask the Court to impute DiMartino's conduct in posting signs on his lawn opposing the applications to each of the individual Town defendants. Without direct evidence in support of a shared intent, the Court declines such invitation. Opposition or disapproval of plaintiffs' applications cannot, without evidence, constitute tortious interference. See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991) ("[Party's] bald assertion, completely unsupported by evidence, did not satisfy their burden."). Therefore, plaintiffs' tortious interference claim must be dismissed as to defendants Rubicam, Manasse, Reyelt, Hall and MacMillan.

As to DiMartino, plaintiffs do not explain how his conduct is tortious. Even public officials maintain their First Amendment rights. See Cooper v. Town of E. Hampton, 888 F. Supp. 376, 379 (E.D.N.Y. 1995) ("A public official's right to speak to the press and the public about his/her concerns or views is certainly protected by the First Amendment."). Absent such explanation, and the Court cannot foresee one, plaintiffs' claims of tortious interference must be dismissed in their entirety.

### C.    Civil Conspiracy

Town defendants move for summary judgment on plaintiffs' conspiracy claims. A claim of civil conspiracy requires plaintiffs to demonstrate:

> (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.

Macomber v. Travelers Prop. & Cas. Corp., 277 Conn. 617, 635-636 (2006). A claim for civil conspiracy must have an underlying tort because civil conspiracy is not an independent claim in and of itself. See Harp v. King, 266 Conn. 747, 779 n.37 (2003).

10

Plaintiffs have not responded to defendants' arguments that this claim cannot stand.  Therefore, these claims will be dismissed as abandoned.  See Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

Even if the Court were to review it on its merits, in light of the Court's dismissal of plaintiffs' allegations of tortious interference, plaintiffs' claim of civil conspiracy would nonetheless be dismissed for lack of an underlying tort.

**D.    Claims Under 42 U.S.C. § 1983**

Plaintiffs allege that Town defendants violated their rights under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 by failing to hold a fair and impartial hearing regarding plaintiffs' applications.

**1.    Claim Against Town of Sharon**

A municipality is liable for a deprivation of a citizen's rights pursuant to 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978).  A municipality may be held liable for inadequate training, supervision or hiring where the failure to train, hire or supervise amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).

In this case, plaintiffs have presented no evidence of any town policy or custom that would tend to deprive them of their constitutional rights.  Therefore, plaintiffs' section 1983 claim against the Town will be dismissed.

### 2.    Claims Against Individual Town Defendants

As to the individual Town defendants, the third amended complaint alleges that such defendants denied plaintiffs their rights to an impartial hearing on the applications. Specifically, plaintiffs contend that the individual Town defendants denied the applications not based on the discretionary provisions of the Town zoning regulations, but for malicious and biased reasons.  This is evidenced, they contend, by Byrne's October 3 letter.

The Due Process Clause requires that generally a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest.  U.S. Const. amend XIV, § 1; Bd. of Regents v. Roth, 408 U.S. 564, 569-70 & n.7 (1972).  Thus, in order to sustain an action for deprivation of property without due process of law, plaintiffs must identify a property or liberty interest, and show that the state actor has deprived them of that interest in an arbitrary or irrational manner.  Harlen Associates v. Inc. Village of Mineola, 273 F.3d 494, 503 (2d Cir. 2001).

The fundamental requisite of procedural due process is the opportunity to be heard.  See Boddie v. Connecticut, 401 U.S. 371, 377 (1971).  This opportunity must be granted in a meaningful time and manner.  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).  Further, the hearing must be "appropriate to the nature of the case."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).  To succeed, plaintiffs must show a "clear entitlement" to success on the applications to the Commission.

12

Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006).  This analysis "focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision."  Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir. 1995).

The standards for the Commission and its members are set forth in the Sharon Zoning Regulations.  The Regulations are clear that the Commission's duty is discretionary, and even if all requirements for a special exception permit are met, the Commission may nonetheless deny the permit.  See Sharon Zoning Regulations, Article VIII § 1 ("After Public Hearing, the [Commission] may approve an application....") (emphasis added).  As the Court of Appeals has stated:

> When a local regulator's discretionary decision to deny an application is not arbitrary or capricious, the plaintiff will usually be deemed not to have a sufficient entitlement to constitute a protected property interest.  On occasion, however, ... the plaintiff may be deemed not to have a protected property interest in the requested permit, even in a case where the denial of the permit is arbitrary.  The fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim.

RRI Realty Corp. v. Southampton, 870 F.2d 911, 918 (2d Cir. 1989).  On the other hand, where zoning regulations are mandatory, the Court of Appeals has found Fourteenth Amendment violations.  See Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir. 1995) (observing that Town Code stated that "upon compliance with the foregoing requirements, a permit shall be issued"); Sullivan v. Salem, 805 F.2d 81, 85 (2d Cir. 1986) (noting that Connecticut law provided that there was no discretion if houses met requirements).

13

The Court of Appeals' decision in Yale Auto Parts is instructive.  In addressing a ruling dismissing the case under Rule 12(c), the Court of Appeals found that plaintiffs could only succeed if they could show a "certainty or a very strong likelihood" that their application would have been granted, even taking the plaintiff's allegations of egregious and politically-influenced conduct as true.  Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985).  Because plaintiffs were unable to show such likelihood of success, their Fourteenth Amendment claims could not go forward.  So too here.

Plaintiffs attempt to argue that the individual Town defendants' motives were malicious and point to the Commission's reliance on factors that were not included in the Regulations.  Plaintiffs, however, fail to establish a clear entitlement to the desired special exceptions to meet the Second Circuit standard, which recognizes the discretion built into the Regulations.  See Pappas v. Town of Enfield, 2010 U.S. Dist. LEXIS 9097, *17 (D. Conn. Feb. 3, 2010) (finding that zoning regulations gave commission sufficient discretion to preclude Fourteenth Amendment claim).  Plaintiffs have not asked the Court to reverse the Commission's decision and have not presented evidence that would allow the Court to do so.  Nor is the Court inclined to revisit the merits of the Commission's decision.  See Village of Belle Terre v. Boraas, 416 U.S. 1, 13 (1974) (Marshall, J., dissenting) (A federal court "should not ... sit as a zoning board of appeals.").

Plaintiffs' reliance on Harris v. Zoning Commission, 259 Conn. 402 (2002) is misplaced.  In that case, the Connecticut Supreme Court observed that a court reviewing a zoning agency's decision could not reach beyond the stated reasons to support the zoning agency's decision.  Here, plaintiffs have not even reached that

14

stage.  In addition, the language in Harris was stated in the context of a challenge to a zoning regulation, not, as here, a challenge to the specific application of a municipality's zoning regulation.  The Court does not look to substantiate the Commission's decision. Rather, in the current case, the Court's role is to examine whether plaintiffs have proffered sufficient evidence to establish a claim that their Fourteenth Amendment rights were violated.

In light of the foregoing, plaintiffs' have put forth no evidence upon which a reasonable jury could rely to find that their Fourteenth Amendment rights were violated by the denial of their applications.  Because no claims against the Town defendants remain, their motion for summary judgment will be granted in its entirety as to these defendants.

## II.    Claims Against Defendant Clow

### A.    Tortious Interference with Business and Contractual Relations

Plaintiffs allege that defendant Clow tortiously interfered with their business and contractual relations by misrepresenting the status of his easement to the Commission. Specifically, plaintiffs assert that Clow's failure to specify that his easement had been released in 2003 constituted tortious misrepresentation.  Clow contends that his actions did not constitute tortious misrepresentation because (1) he never represented that the title search that was submitted was a full search; (2) the title search contains a disclaimer; and (3) the Commission recognized that the title search was not full.  He also asserts that his conduct is protected by the Noerr-Pennington doctrine.

15

Because the allegations involve defendant Clow's applications to a government body, the court must consider the application of the <u>Noerr-Pennington</u> doctrine.[4]  The <u>Noerr-Pennington</u> doctrine "establishes a party's right to petition all branches of the government by providing broad antitrust immunity to a petitioning defendant despite an anti-competitive purpose."  <u>T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.</u>, 33 F. Supp. 2d 122, 125 (D. Conn. 1998).  Despite its antitrust origins, the doctrine has been held to protect the exercise of a defendant's First Amendment rights even when such action would normally constitute tortious interference.  <u>See</u> <u>NAACP v. Claiborne Hardware Co.</u>, 458 U.S. 886, 912 (1982); <u>Zeller v. Consolini</u>, 59 Conn. App. 545, 551 (2000).  As this Court has held, petitioning the government cannot, "as a matter of law form the basis of a ... common law claim of tortious interference with business expectancy because imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems under the First Amendment."  <u>T.F.T.F. Capital</u>, 33 F. Supp. 2d at 125; <u>Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127, 137 (1961) ("In a representative democracy such as this, these branches of government

---

[4]      Plaintiffs do not even substantively address the <u>Noerr-Pennington</u> doctrine in their opposition.  Instead, they rely on this Court's previous ruling as setting the law of the case in this matter.  Plaintiffs misconstrue the law of the case when it comes to the move from a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment.  In the former case, plaintiffs need only make sufficient factual allegations to raise the right to relief above the speculative level.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  To defeat summary judgment, however, plaintiffs must demonstrate a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(2).  Allegations in the complaint cannot defeat summary judgment, although they may defeat a motion to dismiss.  <u>See</u> Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading...."); <u>Meiri v. Dacon</u>, 759 F.2d 989, 997 (2d Cir. 1985) (observing that conclusory statements cannot defeat a motion for summary judgment).

act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives."). Further, courts have held that the doctrine applies to zoning proceedings before a local zoning board. See, e.g., California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510-511 (1972); Empress LLC v. City & County of San Francisco, 419 F.3d 1052 (9th Cir. 2005); WIXT Television, Inc. v. Meredith Corp., 506 F. Supp. 1003 (N.D.N.Y 1980).

The Noerr-Pennington doctrine protects "allegedly false statements," Tuosto v. Philip Morris USA Inc., 2007 U.S. Dist. LEXIS 61669 (S.D.N.Y. Aug. 21, 2007), and statements that fall "far short of the ethical standards generally approved in this country." Eastern R.R. Presidents Conference, 365 U.S. at 140. It does not, however, protect conduct that amounts to a "sham." The sham exception includes "unethical conduct in the setting of the adjudicatory process or the pursuit of a pattern of baseless, repetitive claims." Landmarks Holding Corp. v. Bermant, 664 F.2d 891, 896 (2d Cir. 1981). The sham exception applies when a defendant's activities are not genuinely aimed at procuring favorable government action at all; it does not apply to a defendant who genuinely seeks to achieve his governmental result, but does so through improper means. City of Columbia v. Omni Outdoor Advertising, 499 U.S. 365, 380-81 (1991) ("That a private party's political motives are selfish is irrelevant.... [A]n intent to restrain trade as a result of the government action sought does not foreclose protection."). The gravaman of the inquiry is whether defendants' conduct had "a purpose to deprive the competitors of meaningful access to the agencies and courts." California Motor, 404 U.S. at 512.

17

Courts in the Second Circuit have taken a more expansive view of the Noerr-Pennington doctrine and a more limited view of the sham exception than other courts have.  See Doron Precision Sys. v. FAAC, Inc., 423 F. Supp. 2d 173, 191 (S.D.N.Y. 2006) ("The courts of this District have unanimously held that Noerr-Pennington immunity protects all lobbying and solicitation of public entities, including lobbying for commercial gain, as long as the defendants' petition was not sham conduct.").  Conduct that may fit the sham exception elsewhere has not been held to do so within the Second Circuit.  Compare id., 423 F. Supp. 2d at 192 ("Thus, in this district, the only conduct excluded from Noerr-Pennington coverage is conduct that never genuinely intended to influence government action.") with Whelan v. Abell, 48 F.3d 1247, 1255 (D.C. Cir. 1995) ("However broad the First Amendment right to petition may be, it cannot be stretched to cover petitions based on known falsehoods.").

Courts have recognized that "[m]isrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process."  California Motor, 404 U.S. at 513; see also Livingston Downs Racing Ass'n v. Jefferson Downs Corp., 192 F. Supp. 2d 519, 532 (M.D. La. 2001) ("In the legislative or political arenas, the Court has explained, Noerr-Pennington immunity enjoys its broadest sweep, and the sham exception is at its nadir.").  Even then, however, the court looks to whether the defendant's purpose was "to deprive the competitors of meaningful access to the agencies and courts....  [S]uch a purpose or intent, if shown, would be to discourage and ultimately to prevent the respondents from invoking the processes of the administrative agencies and courts and thus fall within the exception to Noerr."  California Motor, 404 U.S. at 512.  The court also considers to what extent the

18

defendant sought to influence the process versus the outcome of the process.  See Omni Outdoor Advertising, 499 U.S. at 380 ("The 'sham' exception to Noerr encompasses situations in which persons use the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon.").  If the defendant's goal was to prevent the plaintiff from meeting its objective, such activity is protected.  See New York Jets LLC v. Cablevision Sys. Corp., 2005 U.S. Dist. LEXIS 23763 (S.D.N.Y. Oct. 17, 2005) ("To constitute a sham, Cablevision's public statements must have been directed at harming the Jets' interests in some manner distinct from securing defeat of the Sports and Convention Center."); BusTop Shelters, Inc. v. Convenience & Safety Corp., 521 F. Supp. 989, 995 (S.D.N.Y. 1981).

    The statutory procedures governing zoning determinations have led courts to conclude that such processes are adjudicatory in nature.  See, e.g., Kottle v. Northwest Kidney Ctrs., 146 F.3d 1056 (9th Cir. 1998); Livingston Downs, 192 F. Supp. 2d at 534.  In such instances, the Noerr-Pennington doctrine protected defendant Clow's conduct unless: (1) his representations to the Commission were "objectively baseless and merely an attempt to stifle competition," Kottle, 146 F.3d at 1063; (2) he engaged in "a pattern of baseless, repetitive claims," California Motor, 404 U.S. at 513; or (3) his misrepresentations deprived the Commission hearing of its legitimacy.  Kottle, 146 F.3d at 1063.

    In this context, the Court finds that defendant Clow's conduct was not "objectively baseless" because he succeeded in preventing plaintiffs from receiving the special exception.  See Prof'l Real Estate Investors v. Columbia Pictures Indus., 508 U.S. 49, 61 n.5 (1993).  Although a jury may conclude that one reason why Clow

succeeded was because of his alleged misrepresentation, the fact that the Commission found other reasons to reject the applications leads the Court to conclude that Clow's opposition was not objectively baseless.

Second, as a single act, Clow's conduct cannot be considered "repetitive."  Cf. California Motor, 404 U.S. at 513 ("One claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused.").  Plaintiffs point to additional conduct by Clow in opposition to their applications.  This conduct, however, occurred after the Commission's decision and could not constitute opposition before the Commission.

Finally, Clow's alleged misrepresentation did not deprive plaintiffs of meaningful access to the Commission.  Despite Clow's statement, plaintiffs were able to appear before the Commission and submit documents in support of their applications.  Plaintiffs' applications were reviewed but ultimately denied on their merits.  And although plaintiffs did not exercise their rights to do so, they had the opportunity to appeal the denial of the applications.  As such, plaintiffs maintained their access to the Commission and the zoning process.  See Racetrac Petroleum, Inc. v. Prince George's County, 601 F. Supp. 892, 911 (D. Md. 1985)

The Court finds that the Noerr-Pennington doctrine protects Clow's representations to the Commission.  Plaintiffs have failed to demonstrate that his alleged misrepresentation was meant to deprive plaintiffs of meaningful access to the Commission.  Summary judgment will be granted in favor of defendant Clow.

**B.      Civil Conspiracy**

Summary judgment is also appropriate on plaintiffs' conspiracy claim against Clow.  There is no underlying tort to support a conspiracy claim.  Therefore, it will be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Town defendants' motion for summary judgment (Doc. #88) and GRANTS defendant Clow's motion for summary judgment (Doc. #89).  The Court further GRANTS Town defendants' motion to strike certain factual assertions in plaintiffs' Local Rule 56(a) statement.  The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 24th day of June, 2010.

_____/s/_____
Warren W. Eginton
Senior United States District Judge